**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EARNEST SUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  14-cv-6146 |
| | ) | |
| BOARD OF EDUCATION, | ) | |
| BREMEN HIGH SCHOOL | ) | |
| DISTRICT 228, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Board of Education, Bremen High School District 228's (the "Board's") motion to dismiss.  For the following reasons, the Court grants in part and denies in part the Board's motion.

## BACKGROUND

Plaintiff Earnest Sutton ("Sutton") has filed a complaint alleging a violation of procedural due process under 42 U.S.C. § 1983 (R.5, ¶¶ 37-43, Count I) and breach of contract (R.5, ¶¶ 44-48, Count II).  The Board moved to dismiss Sutton's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See generally* R.9, Def.'s Motion to Dismiss)

### I.    The Parties' Relationship

Sutton has worked in the athletic department for District 228, since 1991.  (R.5, ¶ 7.)[1]

Sutton is a lifelong resident of the South Suburbs of Chicago and graduated from Bremen High

---

[1] The facts presented in the Background are taken as true from Sutton's Complaint and all reasonable inferences drawn in Sutton's favor for the purpose of resolving the pending motion.  *See*

School in 1985.  (R.5, ¶ 5.)  After high school, Sutton attended Benedictine University in Lisle,

Illinois and earned a masters degree in marketing while he worked as an assistant coach for the

Benedictine University Football Team.  (R.5, ¶ 5.)  After college, Sutton returned home to

Bremen Township and began working part-time in the athletic department for District 228—

either at Bremen High School and/or Hillcrest High School—performing extra-curricular duties

for the football program, including being appointed to the position of Assistant Football and

Head Football Coach.  (R.5, ¶¶ 6, 7.)  At the beginning of the 2009-2010 school year, Sutton

became a full-time employee of District 228—Hillcrest High School pursuant to a "Supervisory

Personnel Contract" in the position of Dean of Compliance.  (R.5, ¶¶ 8, 9.)[2]  At the end of the

initial one-year employment contract Sutton continued to be employed as Hillcrest High

School's Dean of Compliance for three consecutive years.  (R.5, ¶¶ 9, 11.)  In July of 2012,

Sutton was hired as "Dean" of Hillcrest High School, categorized as an "Administrator."  (R.5,

¶ 10; *see* R.5-1.)

## II.    Sutton's Employment Agreement

Sutton's position as Dean was pursuant to a written employment contract between Sutton

and the Board that ran a five year term, "beginning July 1, 2012 and running through June 30,

2017."  ("Employment Agreement") (R.5, ¶ 10; R.5-1, Ex. A, § 1.)  Sutton's obligations under

*Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).  The Court also considers documents attached to Sutton's Complaint and documents attached to the Board's Motion to Dismiss that are referred to in Sutton's Complaint and are central to the claims.

[2] Although Sutton's Complaint references three exhibits, labeled A-C, only a single exhibit is attached to the Complaint labeled "Exhibit A."  (*See* R.5, ¶ 9 (referencing Exhibit A), ¶ 10 (referencing Exhibit B), ¶ 22 (referencing Exhibit C).)  "Exhibit A" as attached to the Complaint is an Employment Agreement for Sutton as "Dean" of Hillcrest High School (*see* R.5.1), and therefore corresponds to the "Exhibit B" as referenced in the Complaint (*see* R.5, ¶ 10 (referencing Exhibit B, an employment contract for the position of Dean of Hillcrest High School)).  Accordingly, the Court herein refers to the single exhibit attached to Sutton's Complaint as "Exhibit A," consistent with the manner that it was filed with the Court.

the Employment Agreement included "those duties incidental to assisting the Building Principal in the area of student discipline." (R.5, ¶ 12; R.5-1, § 1.) The Employment Agreement further provided that, "the Administrator shall also have all duties as assigned by the Building Principal, Superintendent or the [Board]." (R.5, ¶ 12.) The Employment Agreement expressly provided for Sutton's periodic evaluation as 'Dean" by the Board and required that Sutton meet clearly defined "performance goals" which included, "indicators of student performance and improvement." (R.5, ¶ 13; R.5-1, § 3.) The Board would use these "performance goals" "to measure performance and effectiveness of the Administrator, along with such other information and evidence that the Superintendent or Board may determine as relevant and/or necessary." (R.5, ¶ 13; R.5-1, § 3.) During his employment for District 228, Sutton received excellent and outstanding performance evaluations from his supervisors. (R.5, ¶ 14.)

The Employment Agreement specified various bases for termination of the agreement including "[d]ischarge for cause" which stated:

> Discharge for cause. "For cause" means any conduct, act, or failure to act by the Administrator which is detrimental to the best interests of the School District. Reasons for discharge for cause shall be given in writing to the Administrator, who shall be entitled to notice and a hearing before the Board to determine whether such cause exists.

(R.5, ¶¶ 20, 21; R.5-1, § 8(c).)

## III. Sutton's Arrest

On Sunday, June 10, 2013, at approximately 2:39 a.m., the Homewood Police Department charged Sutton with marijuana possession, drunken driving, no insurance and improper parking on a roadway. (R.5, ¶ 15.) Sutton was not working on June 9 or June 10 and was not required to perform any duties for Hillcrest High School on either of those days. (R.5, ¶ 18.) The traffic arrest did not occur in the town where Hillcrest High School is located— Country Club Hills, Illinois. (R.5, ¶ 18.)

About a week later, on or about June 18, 2013, Renee Simms, the Principal for Hillcrest High School and Sutton's direct supervisor, advised Sutton that it was the policy and past practice of District 228 to permit staff to participate in alcohol abuse treatment programs before initiating any disciplinary action and before taking any action that would lead to possible termination of employment due to alcohol related issues. (R.5, ¶¶ 17, 19.) Principal Simms further recommended Sutton self-report the June 10th arrest to the Superintendent to ensure an alcohol treatment program would be provided in lieu of any disciplinary proceedings. (R.5, ¶ 17.) Prior to Sutton's conversation with Principal Simms, no information was presented to Sutton alleging that his conduct as charged on June 10, 2013 was in any way "detrimental to the best interests" of District 228. (R.5, ¶ 16; *see also* R.5-1, § 8(c).) On June 20, 2013, the local newspaper, Dailey Southtown, publicized Sutton's arrest of suspected driving under the influence, traffic violations and possession of marijuana. (R.5, ¶ 18.)

## IV.     The Superintendent's Recommendation for Dismissal

Following the advice of Principal Simms, on June 25, 2013, Sutton self-reported his arrest to the Bremen High School District Superintendent, Dr. Bill Kendall, ("Superintendent" or "Dr. Kendall"). (R.5, ¶ 19.) In doing so, Sutton made personal and private admissions directly to the Superintendent in order to qualify for the Bremen High School District 228 sanctioned teacher alcohol treatment program. (R.5, ¶ 19.) The very next day, the Superintendent hand-delivered a letter to Sutton entitled "Recommendation for Dismissal." (R.5, ¶ 22, 24; *see also* R.9-4, attached as Ex. B to Def.'s Motion to Dismiss ("Recommendation for Dismissal Letter").) The Recommendation for Dismissal Letter notified Sutton that the Superintendent intended to "recommend to the [Board] that [Sutton] be discharged as an employee of the District for cause." (R.9-4, at 1.) Furthermore, the Recommendation for Dismissal Letter indicated "[p]ursuant to Section 8(C) of your employment agreement with the [Board], you are

entitled to a hearing before the [Board] to determine whether such cause exists for your dismissal." (R.9-4, at 1.) The letter also provided "reasons for [Dr. Kendall's] recommendation to the [Board]" which referenced personal information Sutton shared during his private conversation with Dr. Kendall. (R.5, ¶ 22; R.9-4.) The Recommendation for Dismissal Letter informed Sutton that a "hearing on [Dr. Kendall's] recommendation shall take place during the executive session portion of a special [Board] meeting on July 2, 2013" and further indicated Sutton was "entitled to bring a representative of your choice to the hearing at your sole cost should you wish." (R.9-4, at 2.)

On July 2, 2013, the Superintendent presented his "Recommendation of Dismissal" to the Board at a disciplinary hearing. (R.5, ¶ 24.) The Board permitted Sutton to attend the hearing and address the Board members. (R.5, ¶ 24.) During the hearing, several Board members asked the Superintendent whether his recommendation was based on the not-yet-proven allegations or based solely on the negative publicity that occurred in the local newspaper about Sutton's arrest. (R.5, ¶ 24.) Sutton's allegations infer that upon information and belief, the Superintendent admitted during closed session discussions before the Board and before the vote that his personal recommendation for immediate dismissal was the only appropriate response for the Board to take following the adverse newspaper article published about Sutton's arrest. (R.5, ¶ 25.)

V.     **The Disciplinary Action**

At the conclusion of the closed-session portion of the hearing, Sutton was informed that the Board members had rejected the Superintendent's recommendation for immediate dismissal and voted to suspend him only. (R.5, ¶ 26.) On July 8, 2013, Sutton received a letter ("Suspension Letter") from the Superintendent indicating that the Board had authorized the Superintendent to suspend Sutton from all employment for one year provided Sutton voluntarily agree to certain conditions for his continued employment under the Employment Agreement

during the one-year suspension period.  (R.5, ¶ 28; *see also* R.9-5, Ex. C).  The Suspension Letter explained that "the [Board] determined that [Sutton's] conduct on June 9 and 10, 2013, as discussed at the hearing, was detrimental to the best interests of the School District as referenced in [Sutton's] employment contract."  (R.9-5, at 1.)  The Suspension Letter further indicated that as a disciplinary action "in lieu of discharge … the [Board] determined that [Sutton] would be suspended from [his] employment for one year, the 2013-14 school year, without pay and dismissed [Sutton] as the head football coach at Hillcrest High School effective immediately." (R.9-5, at 1.)  The Suspension Letter further outlined conditions of Sutton's return to employment as Dean for the 2014-15 school year and indicated that Sutton could reapply to a position no higher than Assistant Coach for the 2014-15 school year, provided Sutton abided by the conditions.  (R.9-5, at 1.)

A few weeks later, on July 27, 2013, Sutton's legal counsel sent a letter to Dr. Kendall stating that neither the Board nor the Superintendent individually, had the legal authority to suspend Sutton without pay as a form of discipline under his existing Employment Agreement. (R.5, ¶ 30.)  On August 21, 2013, Sutton was notified via letter from Dr. Kendall that after the Board's reconsideration of Sutton's suspension, the Board voted to terminate Sutton "effective immediately" ("Termination Letter").  (R.5, ¶ 34; R.9-8.)  The Termination Letter advised Sutton that on August 20, 2013, the Board conducted a closed-session meeting to reconsider their July 2, 2013 vote, stating:

> The Board reconsidered your suspension during its meeting last night in light of the letter from your attorney.  The Board has not altered its determination that your conduct on June 9 and 10, 2013, based upon the evidence and arguments it received on July 2, 2013, was detrimental to the best interests of the School District.  The [Board] has further determined that it is not in the best interests of the School District to expend funds to defend a lawsuit challenging its right to suspend you without pay for one year.

As a result, the [Board] voted last night to rescind the one year suspension without pay and the conditions associated therewith. The Board then voted to terminate your employment effective immediately.

(R.9-8, at 1.) Sutton was not given prior notice, invited to appear, or given an opportunity to present any argument in his defense at the Board's closed-session meeting on August 20, 2013. (R.5, ¶¶ 31, 33.)

**VI.  The Dispute**

On April 16, 2014, the Circuit Court of Cook County, found Sutton not guilty of the June 10, 2013, charge of driving under the influence and the offense of having no insurance. (R.5, ¶ 36.) Sutton was fined $500 for illegal parking on the parkway and conditional discharge for the possession of marijuana charge. (R.5, ¶ 36.) On August 11, 2014, Sutton filed his Complaint against the Board alleging a violation of his procedural due process under 42 U.S.C. § 1983 "for the Superintendent to convene a second disciplinary hearing for the sole purpose of convincing the [Board] to alter and change its previous decision rendered on July 2, 2013." (R.5, ¶¶ 40, 41.) Sutton further alleged that the Board breached section 8(c) of the Employment Agreement based on its actions: (1) attempting to force Sutton to accept an involuntary suspension without pay (R.5, ¶ 46); (2) terminating Sutton following a board meeting conducted without notice and without a hearing (R.5, ¶ 47); and (3) falsely claiming that charged and unproven misconduct alleged by the Homewood Police constituted "cause" as defined by the Employment Agreement (R.5, ¶ 48).

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-666 (7th Cir. 2013).

## ANALYSIS

Before reaching the merits of the arguments, the Court briefly addresses the scope of its review. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings, and as such, the Court's "consideration of matters outside the pleadings is not generally permitted," unless the Court converts the motion into one for summary judgment pursuant to Rule 12(d). *See Mclntyre v. McCaslin,* No. 11 C 50119, 2011 WL 6102047, at *4 (N.D. Ill. Dec. 7, 2011) (citing *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998)). Exceptions exist, however, regarding documents that a plaintiff attaches to his complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Exceptions also exist for documents attached to a motion to dismiss as long as "they are referred to in the plaintiff's complaint and are central to his claim." *Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (citations omitted); *see also Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) (explaining that an exception to the general rule

of conversion exists where the parties present records "to which the complaint ha[s] referred" and that are "concededly authentic," and "central" to the claims presented).

The Board attaches a number of exhibits to its motion to dismiss, including (1) the transcript from the Board's Report of Proceedings on July 2, 2013, In Re the Matter of the Disciplinary Hearing of Sutton, which internally refers to eight additional exhibits (Exs. A-J) (*see* R.9-1 to 9-3, Ex. A; *see also* R.5, ¶ 24); (2) a letter from Dr. Kendall to Sutton Re: Recommendation for Dismissal (R.9-4, Ex. B; *see also* R.5, ¶¶ 22, 24); (3) a letter from Dr. Kendall to Sutton Re: Suspension Without Pay (R.9-5, Ex. C; *see also* R.5, ¶¶ 28, 29));[3] (4) Summary of Closed Session Board Meeting on August 20, 2013 (R.9-6, Ex. D); (5) Board Regular Meeting Minutes on August 20, 2013 (R.9-7, Ex. E); and (6) a letter from Dr. Kendall to Sutton Re: Termination of Employment (R.9-8, Ex. F; *see also* R.5, ¶ 34).

Although not directly argued with reference to a specific exhibit, the Board's Motion to Dismiss cites *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619-20 (7th Cir. 2012) for the proposition that the Seventh Circuit "has previously approved the attachment of a meeting transcript to a motion to dismiss involving a due process complaint." (R.9, at 5.) This case is inapplicable to the situation here, however because the *Santana* district court was reviewing evidence gained during limited discovery to resolve a threshold question in the case—the physical scope of Santana's ban from the defendants' premises in order to determine if he was deprived of a liberty interest. *Santana*, 679 F.3d at 619. Based on the transcript, the district court found that the ban was limited and ordered the plaintiff to amend his complaint accordingly. *Id.* The Seventh Circuit found the district court appropriately considered the

---

[3] The Court notes that the second page of Ex. C, Dr. Kendall's letter to Sutton Re: Suspension Without Pay and the second page of Ex. F, Dr. Kendall's letter to Sutton Re: Termination of Employment are misplaced and should be interchanged with one another, as indicated by the clear context of the letters as attached. (*See* R.9-5, at 2; R.9-8 at 2).

additional evidence in this context because (1) the documents were referenced in *Santana*'s complaint and central to his claims and (2) even if the district court had converted the motion to dismiss to one for summary judgment, "[t]he parties had ample notice, time to respond, and the district court considered everything that the parties claimed to be probative of the scope of the ban." *Id.*, at 619-20. The *Santana* case is inapposite to this case, as there has not been a determination that the transcripts or minutes to the board meetings are necessary to resolve a specific factual dispute underlying Sutton's due process claim or a threshold issue in this case and there has been no relevant discovery given to the parties. As such, the Court does not consider Exs. B, D, and E for the purposes of resolving the Board's motion.

The Court does consider, however, in addition to Sutton's Complaint, the Employment Agreement between Sutton and the Board, attached to the Complaint as "Exhibit A" and referred to in the Complaint. (R.5-1; R.5, ¶¶ 10, 12, 13, 20, 21, 23; *see also* Fed. R. Civ. P. 10(c).) The Court further considers a portion of the Board's exhibits as "part of the pleadings" because they are "referred to in [Sutton's] complaint and are central to his claim." *See Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975 (7th Cir. 2013). First, paragraphs 22 and 24 of Sutton's Complaint refer to a letter to Sutton from the Superintendent, Dr. Kendall, dated June 26, 2013 entitled "Re: Recommendation for Dismissal." (R.5, ¶¶ 22, 24.) Because it deals with the Superintendent's recommendation for Sutton's dismissal in response to the charges of June 10, 2013, the Recommendation for Dismissal Letter is central to his claims. (*See* R.9-2, at 10-11 (Ex. B); R.9-4 (Ex. B); R.5, ¶¶ 22, 24.) Second, paragraphs 28 and 29 of Sutton's Complaint refer to a letter to Sutton from Superintendent, Dr. Kendall, dated July 8, 2013, entitled "Re: Suspension Without Pay." (R.5, ¶¶ 28, 29.) Because it deals with the Board's determination of Sutton's suspension due to his conduct on June 9 and 10, 2013, the Suspension Letter is central

to his claims. (*See* R.9-5 (Ex. C); R.5, ¶¶ 28, 29.) Lastly, paragraph 34 of Sutton's Complaint

refers to a letter to Sutton from the Superintendent, Dr. Kendall, dated August 21, 2013, entitled

"Re: Termination of Employment." (R.5, ¶ 34.) The Termination Letter deals with the Board's

determination of Sutton's termination of employment and is, therefore, central to his claims.

(*See* R.9-8 (Ex. F); R.5, ¶ 34.) The Court has not considered the remainder of the attachments as

they either are not relevant to the resolution of the motion to dismiss or are not documents that

the Court may properly consider when ruling on a Rule 12(b)(6) motion to dismiss. *See e.g.,*

*Friello v. Bank of New York*, No. 12 C 03270, 2012 WL 4892856, at *3 (N.D. Ill. Oct. 15, 2012).

## I.     Count I – Procedural Due Process

Sutton's Complaint alleges a violation of his procedural due process under 42 U.S.C.

§ 1983 "for the Superintendent to convene a second disciplinary hearing [on August 20, 2013]

for the sole purpose of convincing the [Board] to alter and change its previous decision rendered

on July 2, 2013." (R.5, ¶¶ 41-43; *see also* R.13, at 3-4.) Sutton does not allege any violations of

his procedural due process regarding the first hearing on July 2, 2013. (*See* R.5, ¶¶ 37-43; *see*

*also* R.13, at 4 ("The July 2, 2013, disciplinary hearing is of no consequence and is not at issue

in this action …").) Accordingly, the Court focuses on whether Sutton has stated a cognizable

claim against the Board for deprivation of due process related to the August 20, 2013 meeting.

### A.     Sutton's State Law Remedy

To state a procedural due process claim, a plaintiff must allege (1) a deprivation of a

protected interest, and (2) insufficient procedural protections surrounding that deprivation.

*Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (*citing Doherty v.*

*City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996)). The relevant constitutional question,

however, is "whether sufficient state-law protections *exist*, not whether sufficient protections

were *afforded*." *Michalowicz*, 528 F.3d at 534 (emphasis in original). As such, "[a] complaint does not state a valid procedural due process objection … if it does not include a challenge to the fundamental fairness of the state procedures." *Id.* (citations omitted). As relevant to the case here, the Seventh Circuit has provided that for a terminated employee with a protected property interest, "the adequacy of pretermination procedures is dependent upon the extent of post-termination procedures." *Michalowicz,* 528 F.3d at 534 (citing *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990) ("Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a tenured public employee")).

In the context of a due process claim related to a pretermination hearing, the Seventh Circuit has further instructed that "[a]lthough the *scope* of the right to a pretermination hearing is dependent upon the adequacy of post-termination remedies, an independent right to a pretermination proceeding does exist in this context." *Michaelowicz*, 528 F.3d at 536 (emphasis in original) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (due process "requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment")). When adequate post-termination proceedings exist, however, a pretermination hearing need only provide "an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Michaelowicz*, 528 F.3d at 537 (citing *Loudermill*, 470 U.S. at 545-46); *see also Schact v. Wis .Dep't of Corr*, 175 F.3d 497, 503 (7th Cir. 1999) (if "there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated.").

For a due process claim based on a post-termination hearing, the Seventh Circuit describes this claim as a "species of due process claim [that] is a challenge to the 'random and unauthorized' actions of the state officials in question, i.e., to their unforeseeable misconduct in failing to follow the requirements of existing law." *Michaelowicz*, 528 F.3d at 535; *see also id.*, (citing *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) ("Where state law remedies [to random and unauthorized conduct] exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate."). Accordingly, a due process claim based on a post-termination hearing "can stand only if Illinois law provides insufficient remedies for the violation" alleged. *Michaelowicz*, 528 F.3d at 535.

Sutton's due process claim alleges a violation in his constitutional rights to a pretermination hearing. Specifically, Sutton alleges his due process rights were violated when the Board held its second meeting before he was terminated and that "on or before August 20, 2013, [he] had a right to receive notice and right to be heard at any subsequent disciplinary hearing ...." (R.5, ¶¶ 40, 41.) Sutton's brief further supports this conclusion, specifically arguing that "Plaintiff was denied procedural due process on August 20, 2013." (R.13, at 3.) As such, the existence of adequate post-termination remedies may serve to limit the scope or truncate the constitutional requirements for a pretermination hearing. *See Michaelowicz*, 528 F.3d at 537 (citing *Loudermill*, 470 U.S. at 545-46) (explaining that when adequate post-termination proceedings exist, a pretermination hearing need only provide "an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action"); *see also Schact* 175 F.3d at 503 (if "there is the opportunity for full administrative review once a

termination decision has been reached, the pre-termination hearing can be somewhat truncated.").

The Board argues that Sutton's due process claim is without merit because either (1) he was entitled to seek review of his dismissal through a writ of certiorari which is an adequate state law remedy;[4] (2) he was only entitled to a limited due process hearing since he had an adequate post-deprivation remedy; or (3) even if his state law remedy was inadequate, the hearing provided to Sutton comported with due process standards.  (*See* R.9, at 5-11.)  In arguing that Sutton had access to a state law remedy, the Board references Illinois case law providing that "a party may seek review of a final agency decision through a common law writ of *certiorari*, if the Administrative Review Act is inapplicable.  (*See* R.9, at 6.)  Although the Board does not indicate whether the Administrative Review Act is applicable here, Sutton concedes the availability of a writ of *certiorari*, addressing it as an applicable remedy.  (*See* R.13, at 6, 7.) Sutton contends, however, that the availability of a writ of *certiorari* in this case either (1) does not result in, *ipso facto,* satisfaction of due process or (2) is not an *adequate* state law remedy such that his due process claim is foreclosed in federal court.  (*See* R.13, at 6-8).

It is not necessary for the Court to determine the adequacy of a writ of *certiorari* in this case, however, because the pretermination proceedings made available to Sutton comport not only with the limited due process standards applicable to an adequate state law remedy, but also

---

[4] The Board relies on *Veterans Legal Defenese Fund v. Schwartz,* 330 F.3d 937, 941 (7th Cir. 2003) and *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990) to support its argument that the availability of an adequate state law remedy of a writ of certiorari forecloses Sutton's procedural due process claim as a matter of law. (*See* R.9, at 6-7.)  Those cases, however, are inapplicable to the situation here as in *Veterans Legal Defense*, the state provided no predeprivation remedies (*Veterans Legal Defense*, 330 F.3d at 939-40) and in *Easter House* the Seventh Circuit assumed that a deprivation of constitutional magnitude occurred (i.e., no predeprivation hearing) for the purposes of its analysis (*Easter House*, 910 F.2d at 1396).  The Seventh Circuit, in those cases, then focused on postdeprivation remedies after determining that the defendants' actions constituted "random and unauthorized conduct."  *See Veterans Legal Defense*, 330 F.3d at 940; *Easter House*, 910 F.2d at 1405.  Here, Suttons' due process claims relates to a predeprivation hearing and there is no dispute that a predeprivation hearing occurred on July 2, 2013.  Indeed, Sutton argues specifically against a finding that the Board's conduct was "random and unauthorized" such that a postdeprivation remedy would foreclose his due process claim.  (*See* R.13, at 6, n.1.)

comport with the full scope of constitutional rights afforded in a pretermination hearing applicable when an inadequate state law remedy exists. As addressed more fully below (*see infra,* I.B.), the July 2, 2013 disciplinary hearing conducted by the Board in this case provided "all the procedural safeguards" required by due process. *See Vukadinovich v. Bd. of School Trustees of Michigan City*, 978 F.2d 403, 411 (7th Cir. 1992) (finding the defendant's pre-deprivation hearing constitutional because it provided all the procedural safeguards required by due process.) The disciplinary hearing of July 2, 2013 was more akin to a trial, where the Superintendent presented his Recommendation for Dismissal and Sutton was able to address the Board and provide evidence and testimony to the Board in support of his retention. (*See* R.5, ¶ 24; R.13, at 2.) Due process required no more. *See Vukadinovich*, 978 F.2d at 411.

**B.     The Hearing Provided to Sutton by the Board Comported with Due Process Standards**

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. *See Matthews v. Eldridge*, 424 U.S. 319, 322, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To assert a violation of the Due Process Clause, Sutton must establish that (1) he had a "property interest" and that (2) he was deprived of this interest without due process of law. *See Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood*, 426 U.S. 341, 343, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Property interests are not created by the United States Constitution, "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Moore v. Muncie Police and Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In the context of a

fired public employee bringing a procedural due process claim against his employers, for example, the Seventh Circuit has stated that "[a] property interest in continued employment 'can be created in one of two ways, (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Phelan*, 347 F.3d at 681); *see also Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988); *Krieg v. Seybold*, 481 F.3d 512, 519-20 (7th Cir. 2007).

In claiming a violation of procedural due process, an "essential principal of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (citations omitted). The core requirement of the Due Process Clause is that an individual is heard before being deprived of life, liberty, or property. *See Loudermill*, 470 U.S. at 542. There can be no due process without "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citations omitted). Generally, due process requires that before a government body deprives a person of a constitutionally protected interest in life, liberty, or property, it must conduct some type of hearing accompanied by notice and an opportunity to be heard. *Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984; *Loudermill,* 470 U.S. at 542; *Swanson v. Village of Lake in the Hills,* 962 F.2d 602, 604 (7th Cir. 1992). The extent and type of hearing requires a balancing of the private interest in retaining employment, the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and the government's interest, including the function involved and the burdens that additional procedures would entail. *Loudermill,* 470 U.S. at 542–43; *Mathews,* 424 U.S. at 335; *Swanson,* 962 F.2d at 604.

The Court does not focus on the initial inquiry—whether Sutton had a constitutionally protected property interest in his employment—as the Board conceded this issue in its motion to dismiss. (*See* R.9, at 7-8, n. 1; *see also* R.5-1, § 8). The Court, therefore, considers only whether the collective procedures accompanying the termination of Sutton's employment contract were constitutionally adequate.

Here, Sutton's allegation of deprivation surrounds the second closed-session meeting by the Board on August 20, 2013 and the Board's alleged failure to provide notice and an opportunity to be heard at that meeting. This argument slices the situation a bit too thinly, however, as Sutton's situation is not one that can be parsed into a divide between the July hearing and the August meeting such that the Board's provisions of due process in the first hearing do not carry over into the second meeting. After Sutton's arrest and subsequent discussion with the Superintendent, Sutton was provided with notice on June 26, 2013 of the Superintendent's Recommendation for Dismissal Letter that he was entitled to a hearing before the Board to determine whether cause existed for his dismissal existed and that a hearing on the Superintendent's letter was to take place on July 2, 2013. (R.9-4.) The Recommendation for Dismissal Letter also referenced section 8(c) of Sutton's Employment Agreement which guarantees he will be notified of the reasons for his discharge for cause and is entitled to notice and a hearing before a determination of whether such cause exists. (*See* R.5-1, § 8.) The Recommendation for Dismissal Letter apprised Sutton that the July 2, 2013 hearing stemmed from his conduct and arrest on the weekend of June 9-10, 2013 and the facts Sutton shared with the Superintendent regarding the arrest. (R.9-4, Ex. B) Sutton was also informed that he could bring a representative of his choosing to the hearing, at his own cost. (R.9-4, Ex. B.) Sutton attended the hearing and participated in his defense, and alleged in his Complaint specific topics

of discussion between the Board and the Superintendent discussed at the hearing—e.g., the basis of the Superintendent's recommendation.  (*See* R.5, ¶ 24.)

After the hearing, the Superintendent notified Sutton on July 8, 2013 that "the [Board] determined that [Sutton's] conduct on June 9 and 10, 2013, as discussed at the hearing, was detrimental to the best interests of the School District as referenced in [Sutton's] employment contract."  (R.9-5, Ex. C)  The Board then specified that "in lieu of discharge" a suspension was put in place for the upcoming school year of 2013-14.  (R.9-5.)  After receiving the letter from Sutton's attorney indicating the Board may not have legal authority to suspend Sutton for a year under the Employment Agreement, the Board held the second meeting.  (R.5, ¶¶ 30-33.)  The Board did not give Sutton notice or allow him to attend the second, August 20, 2013 meeting.  (R.5, ¶ 33.)  After that meeting, however, the Board gave Sutton a Termination Letter indicating that after reconsideration of Sutton's suspension, the board voted to terminate Sutton.  (R.5, ¶ 34; R.9-8.)  In that Termination Letter, the Superintendent explicitly stated "[t]he Board has not altered its determination that your conduct on June 9 and 10, 2013, based upon the evidence and arguments it received on July 2, 2013, was detrimental to the best interests of the School District."  (R.9-8.)  The Board further noted that "it is not in the best interests of the School District to expend funds to defend a lawsuit challenging its right to suspend you without pay for one year."  (R.9-8.)

Given the competing interests at stake—both those of Sutton and the Board—the Court does not find that the Constitution entitled Sutton to more process than he obtained.  The Board provided a constitutionally adequate pre-deprivation hearing.  Indeed, Sutton specifically alleges that he "was permitted to attend the [July 2, 2013] hearing and address the Board members" (R.5, ¶ 24) and further asserts in briefing that he "was provided timely notice of the hearing, was

permitted to attend the hearing and given an opportunity to address the Board in his defense." (R.13, at 2). These concessions and allegations demonstrate that the Board's notification to Sutton six days prior to the July 2, 2013 hearing was timely and that Sutton was given an opportunity to fully participate. *See e.g., Swanson v. Village of Lake in the Hills*, 962 F.2d 602, 605 (7th Cir. 1992) (finding notice provided 24 hours prior to hearing was sufficient for due process purposes); *see also Zinermon,* 494 U.S. at 127 ("Generally, due process requires that before a government body deprives a person of a constitutionally protected interest in life, liberty, or property, it must conduct some type of hearing accompanied by notice and an opportunity to be heard"); *Vukadinovich*, 978 F.2d at 411 (finding no due process violation for a former employee afforded a predeprivation hearing that allowed him to present witnesses and evidence, cross-examine witnesses, and argue before the Board).

The facts as alleged also demonstrate that the Board reached a decision regarding cause for dismissal on July 2, 2013. Namely, the Board determined that Sutton's conduct was detrimental to the best interests of the School District after the meeting on July 2, 2013 and did not alter that decision thereafter. Although Sutton alleges that he was not provided notice or an opportunity to be heard at the second meeting on August 20, 2013 (R.5, ¶¶ 31, 33), he also alleges that at that meeting "the Superintendent again recommended that Sutton be dismissed for *the same reasons* that he had submitted to the Board on July 2, 2013" (R.5, ¶ 32 (emphasis added)). Even viewing the allegations in the light most favorable to Plaintiff, the only alterations to the Board's decision pertained to the mode of discipline, which morphed from suspension without pay to termination, not the fact that cause existed for implementing discipline. Indeed, the allegations indicate that the Board's second meeting may not have occurred without Sutton's legal protest that his Employment Agreement did not permit the Board to suspend him. Based

on these facts as alleged and taken in the light most favorable to Sutton, the second closed door session of the Board did not otherwise deprive Sutton of the procedural due process the Board provided him on July 2, 2013. *See Loudermill*, 470 U.S. at 542 (explaining the "root requirement" of the Due Process Clause is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest").

*Bond v. City of Bethlehem*, 505 Fed.Appx. 163, 167 (3d Cir. 2012) is instructive. In *Bond*, the Third Circuit found no violation of a city employee's due process rights with respect to his termination when he was given the opportunity to be heard regarding his suspension. 505 Fed. Appx. at 167. On at least two occasions, plaintiff Bond—a city employee—ignored a protective order issued against him from a former girlfriend—also a city employee—after Bond sent her threatening and harassing text messages. *Id.* at 164. Bond argued that while the City provided him with a *Loudermill* hearing related to his *suspension,* his due process rights were violated because he was not given a second *Loudermill* hearing before his *termination*. *See id.* at 167. At the suspension hearing, Bond had an opportunity to present his side of the story and admitted that he had engaged in the culpable conduct of sending harassing text messages. *Id.* The Third Circuit found that because the plaintiff "was given notice of possible termination in a pre-deprivation hearing" and "his suspension and termination derive from the same events," he was not deprived of due process. *Id.* Similarly, here, Sutton admitted to the Superintendent on June 25, 2013 that on June 9, 2013 and June 10, 2013, he had operated a vehicle while feeling intoxicated and was knowingly in possession of marijuana. (R.5, ¶¶ 19, 22; R.9-4, ¶¶ 9-13.) The Board provided Sutton adequate notice of the July 2, 2013 hearing where Sutton was fully aware that a recommendation for his dismissal—as presented to him in the Recommendation for Dismissal Letter—was being addressed. (R.5, ¶¶ 22, 24.) Sutton was also aware of the reasons

underlying the Superintendent's recommendation—namely his conduct in early June 2013. (R.5, ¶¶ 22; R.9-4; *see also* R.9-5.) The Board also gave Sutton an opportunity to be heard at the July 2, 2013 hearing and to tell his side of the story. (R.5, ¶ 24; R.9-4 (stating "you are entitled to a hearing before the [Board] to determine whether such causes exists for your dismissal"); *see also* R.9-5 (stating "you were given the opportunity to cross-examine [the Superintendent] and to present evidence to the [Board] in response").) Because Sutton knew the proposed action of dismissal was the topic the Board intended to address at the July 2, 2013 hearing, he was not deprived of any "fundamental" due process requirements regarding his termination and was given the right to "present reasons … why [the] proposed action should not be taken." *See Loudermill*, 470 U.S. at 546.

Viewing the allegations in the light most favorable to Sutton, his attorney's letter to the Superintendent effectively initiated the Board's second meeting. Plaintiff does not cite any case law to support the notion that this letter sent after the Board suspended Sutton creates a new starting line for Sutton's constitutional rights to due process and negates any procedural process afforded to Sutton prior to that point. Although Sutton was unaware of and did not participate in the second meeting, he does not allege that the Board considered any additional evidence beyond what it considered at the July 2, 2013 hearing where Sutton admits he received due process. (*See* R.13, at 2 ("Sutton was provided timely notice of the [July 2, 2013] hearing, was permitted to attend the hearing and given an opportunity to address the Board in his defense. Other evidence and testimony was presented to the Board in support of his retention").) Indeed, Sutton does not dispute that the basis for his termination was any different than the prior basis for his suspension as he alleges that at the second meeting "the Superintendent again recommended that Sutton be dismissed for *the same reasons* that he had submitted to the Board on July 2, 2013." (R.5, ¶ 32

(emphasis added).)  No factual disputes have been alleged surrounding Sutton's conduct on June 9-10, 2013 or the Board's determination after the July 2, 2013 hearing that Sutton's conduct was detrimental to the best interests of the School District.  Taking the facts in the light most favorable to Sutton, the Board afforded Sutton procedural due process surrounding his termination.  *See Barbian v. Panagis*, 694 F.2d 476, 488 (7th Cir. 1982) (citing *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977)) (holding that "a grievant need not be provided any opportunity to present evidence to support his arguments, when the essential facts surrounding the dispute had been previously resolved"); *see also Green v. Finley*, 749 F.2d 467, 470 (7th Cir. 1984) (citations omitted) (finding suspension and discharge of a county employee without a termination hearing satisfied constitutional procedural due process requirements, stating "[s]ince the plaintiffs did not 'contend that, given the opportunity they could have presented new or additional evidence to dispute those findings,' the Due Process Clause did not 'require that plaintiffs be permitted to repeat the presentation of evidence which was previously fully litigated at trial by the parties'"); *United States v. Raddatz*, 447 U.S. 667, 680, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980) ("The Due Process Clause does not require the plaintiffs be permitted to repeat the presentation of evidence which was previously litigated at trial by the parties.").  Accordingly, the Court finds that Sutton has failed to sufficiently allege a violation of his procedural due process rights regarding his termination and dismisses Count I of Sutton's Complaint with prejudice.

## II.    Count II – Breach of Contract

Sutton also alleges the Board breached section 8(c) of the Employment Agreement based on its actions: (1) attempting to force Sutton to accept an involuntary suspension without pay (R.5, ¶ 46); (2) terminating Sutton following a board meeting conducted without notice and

without a hearing (R.5, ¶ 47); and (3) falsely claiming that charged and unproven misconduct alleged by the Homewood Police constituted "cause" as defined by the Employment Agreement (R.5, ¶ 48). Sutton alleges pendent jurisdiction on the state law breach of contract claim pursuant to 28 U.S.C. § 1367(a). (R.5, ¶ 2.)

Although "supplemental jurisdiction persists even if all the claims giving rise to original jurisdiction have been dismissed," the general rule is that 'when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010); *see also* 28 U.S.C. § 1367(c). The Court, therefore, exercises its discretion and declines to consider Sutton's claims premised on state law. As such, Count II of Sutton's Complaint is dismissed without prejudice to filing in state court.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant's Motion to Dismiss and dismisses Count I with prejudice and Count II without prejudice.

**DATED: February 11, 2015**                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge